IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  05-cv-01661-PSF-CBS

RUSSELL M. BOLES,
        Plaintiff,
v.

RICHARD DANSDILL,
LT. CHARLES PEOPLES,
TOM MALLARY,
TIMOTHY CREANY,
MICHAEL S. WALSH,
GLORIA MASTERSON, and
ANTHONY A. DECESARO,
        Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

Magistrate Judge Craig B. Shaffer

        THIS MATTER comes before the court on Defendants' Partial Motion to Dismiss (doc.

#69), filed on December 28, 2006.  Also pending before this court are Plaintiff Boles' Motion to

Amend Operative Complaint (doc. #79), filed on January 22, 2007,  Plaintiff's Motion to Dismiss

Tendered Defences (sic) of Defendants (doc. #88), filed on February 8, 2007, and Plaintiff's

Motion for Temporary Restraining Order (doc. #94), filed February 26, 2007.

        Pursuant to the October 20, 2006 Order of Reference to Magistrate Judge, the instant

case was referred to this Magistrate Judge to, *inter alia,* "[h]ear and determine pretrial matters,

including discovery and other non-dispositive motions," and "submit proposed findings of fact and

recommendations for rulings on dispositive motions."  The court has reviewed the pending

1

motions, as well as the parties' response and reply briefs, the entire case file, and the applicable

law and is sufficiently advised in the premises.  I have also determined that oral argument would

not assist the court in analyzing the positions advocated the parties.  For the reasons discussed

below, the court submits the following Recommendation.

## FACTUAL BACKGROUND

*Pro se* Plaintiff Russell Boles is a prisoner in the custody of the Colorado Department of

Corrections and is currently incarcerated at the Sterling Correctional Facility in Sterling,

Colorado.  Plaintiff Boles initiated the instant lawsuit on August 26, 2005 by filing a verified

Prisoner Complaint (doc. #3).  Plaintiff's original Complaint asserted seven claims for relief

against nine individual Defendants, as well as "all employees of the Dept. of Corrections, all

employees clinical services for the DOC, [and] all employees of the pharmacy serving the DOC."

Also on August 26, 2005, Mr. Boles filed a Notice of Application for Temporary Restraining

Order and a separate Motion and Application for Preliminary Injunction.  The latter motions

sought to restrain the Defendants from interfering in any way with Plaintiff's receipt of therapeutic

diet snacks, his use of BiPAP and oxygen concentrator machines, and his receipt of prescribed or

recommended medications.

Plaintiff's requests for injunctive relief were denied on September 8, 2005.  The District

Court held that Mr. Boles had failed to allege any facts demonstrating that he faced immediate

and irreparable injury in the absence of a temporary restraining order or preliminary injunction.

*See* Order Denying Motion for Preliminary Injunction and Temporary Restraining Order (doc. #

12).

On September 23, 2005, the District Court concluded that Plaintiff's original Complaint

2

was deficient and directed Mr. Boles to file an amended complaint.  In particular, the District

Court cautioned the Plaintiff that an amended complaint

> must allege simply and concisely, his specific claims for relief, including the
> specific rights that allegedly have been violated and the specific acts of each
> defendant that allegedly violated his rights.  He is directed to include facts
> pertinent to each claim with each claim.

In the same Order, the District Court determined that Plaintiff had failed to describe with

specificity the claims he had attempted to exhaust through the grievance process or to attach

copies of administrative proceedings pertinent to several claims asserted in his Complaint.  Mr.

Boles was ordered to show cause why his Complaint should not be dismissed for failure to

demonstrate exhaustion of the Department of Corrections' three-step administrative grievance

procedure as to each of his asserted claims.  *See* Order to File Amended Complaint and to Show

Cause (doc. #16).

On November 8, 2005, Plaintiff Boles filed a "(Verified) Amended Prisoner Complaint

Includes Answer to Show Cause [jury requested]."  On November 9, 2005, the District Court

issued a Minute Order allowing Mr. Boles to amend the caption of his November 8th Amended

Complaint and granting Plaintiff thirty days in which to comply with the Court's September 23rd

Order.  Plaintiff was directed to file a final, cohesive, amended complaint that complied with the

directives set forth in the September 23rd Order.  On December 9, 2005, Plaintiff filed yet another

"Amended Prisoner Complaint (verified) [Jury Requested]."[1]  This "Second" Amended Complaint

asserts three claims for relief against Defendants Dansdill, Peoples, Mallary, Creany, Walsh,

Masterson, and DeCesaro in their individual capacities only.

_____

[1]At this time, Plaintiff's December 9, 2005 Second Amended Complaint (doc. # 30) stands
as the operative pleading in this case.

On January 10, 2006, the District Court entered an Order and Judgment of Dismissal after concluding that Plaintiff Boles had failed to satisfy his burden of pleading or demonstrating exhaustion of administrative remedies as to each of his asserted claims. The Tenth Circuit reversed that decision in an Order and Judgment filed on September 13, 2006. While the Tenth Circuit affirmed the District Court's denial of preliminary injunctive relief, it reversed and remanded the dismissal for lack of exhaustion of administrative remedies. According to the Tenth Circuit,

> Mr. Boles pleaded exhaustion and provided such documentation as was reasonably within his ability to submit. . . . Thus, the district court should have allowed the case to go forward. If defendants have a colorable argument based on lack of exhaustion, they may raise it in a dispositive motion.

(*See* doc. # 54).

## ANALYSIS

I.     *Plaintiff's Motion to Amend Operative Complaint*

On January 22, 2007, Plaintiff Boles moved to "amend and tender a complaint reflecting further degeneration of the circumstances grieved in this case." Plaintiff contends that his proposed amendment is necessary because

> though initial defendants are primarily responsible for what has been the thrust of this complaint, it can be argued that they have not been in direct charge of my medical care and lack there of (sic) since my "progressive" move to lower security level prisons as of Nov. 26th, 2005.

*See* Plaintiff's Motion to Amend Operative Complaint (doc.#79). Boles also suggests that additional Defendants "have operated in concert and succession to the original Defendants, continuing the some (sic) denial of adequate medical care complained of, adding similar and greater violations of their own." The proposed amended complaint seeks to add 32 new

Defendants, including senior officials within the Colorado Department of Corrections, various staff members at the Sterling Correctional Facility, Arrowhead Correctional Facility, and Canon Minimum Complex, and employees of Access Correctional Care. The proposed amendment would assert claims against the current Defendants and the new Defendants, in both their individual and official capacities.

Defendants oppose Plaintiff's latest motion to amend, arguing that the proposed amended complaint is untimely because it was filed seven days after the January 15, 2007 deadline. Defendants also suggest that the proposed amendments fail to comply with the pleading requirements of Fed.R.Civ.P. 8 and would be subject to dismissal as futile.

The court acknowledges the well-settled rule that motions to amend should be freely granted when justice requires. *See, e.g., Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1459 (D. Colo. 1995). However, a motion to amend may be denied because of "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ." *Foman v. Davis,* 371 U.S. 178, 182 (1962). In considering the "needs of justice," the court must take into consideration the interests of all parties. A motion to amend must be left to the sound discretion of the district court, and must be decided based upon a careful evaluation of multiple factors. *See Bauchman v. West High School*, 132 F.3d 542, 559 (10th Cir. 1997); *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984).

A.    <u>Undue Delay</u>

The court recognizes that "[u]ntimeliness in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay." *Panis v.*

*Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir. 1995). *See also Deghand v. Wal-Mart Stores, Inc.,* 904 F. Supp. 1218, 1221 (D. Kan. 1995) (holding that courts may deny leave to amend for untimeliness or undue delay without a showing of prejudice to the opposing party). *Compare Mantz v. Chain*, 239 F. Supp.2d 486, 505-06 (D.N.J. 2002) (untimely motion to amend may be denied where delay would unfairly disadvantage the non-moving party or deprive the non-moving party of an opportunity to present facts or evidence) and *Christopher v. Mobil Oil Corp.*, 149 F.R.D. 539, 544 (E.D. Tex. 1993) (allowing amendment despite the fact that new claims could have been asserted from the outset of the litigation). While Boles filed his motion to amend seven days after the court-established deadline, I decline to deny the motion on that basis in the absence of any showing of prejudice to Defendants. *Cf. Wyatt v. Bellsouth, Inc.*, 176 F.R.D. 627, 630 (M.D. Ala. 1998) (permitting plaintiff to allege new claim 18 months after complaint filed).

B.    Futility

Although Fed. R. Civ. P. 15(a) contemplates that leave to amend be freely given, that requirement does not apply where an amendment obviously would be futile. *T.V. Communications Network, Inc. v. Turner Network Television, Inc*., 964 F.2d 1022, 1028 (10th Cir. 1992). *See also Simon v. Navon*, 951 F. Supp. 279, 283-84 (D. Me. 1997) (motion to amend may be denied where proposed amendment advances claim that is legally insufficient on its face). Where a party opposes a motion to amend on grounds of futility, the court must apply the same standard that governs a motion to dismiss. *Upsher-Smith Laboratories, Inc. v. Mylan Laboratories, Inc.*, 944 F. Supp. 1411, 1441 (D. Min. 1996). *See also Jefferson County School District No. R-1 v. Moody's Investor's Services, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) (proposed amendment is futile if the complaint, as amended, would be subject to dismissal).

Rule 8(a) of the Federal Rules of Civil Procedure states that a complaint shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading requirement is intended to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). *See also Blinder & Robinson Co. v. SEC*, 748 F.2d 1415, 1419 (10th Cir. 1984) ("a plaintiff must state a compensable claim for relief that details the facts forming the basis for the claim"). The information provided by the pleader must be adequate to set forth the basis of his claim "as distinguished from a bare averment that he wants relief and is entitled to it." *See* Wright & Miller, *Federal Practice and Procedure*, Civil 2d § 1215 and 145 (1990). While *pro se* pleadings should be construed liberally and held to a less stringent standard than formal proceedings drafted by lawyers, *Gibson v. City of Cripple Creek,* 48 F.3d 1231 (10th Cir. 1995), that standard does not override a *pro se* plaintiff's responsibility to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957) (*pro se* plaintiff's complaint must be sufficient to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests"). *See also Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (pro se litigant required to follow the rules of federal and appellate procedure).

This court cannot be this *pro se* litigant's advocate. *Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)

(court may not "supply additional factual allegations to round out a plaintiff's complaint").  The

court may disregard and dismiss without a hearing claims that are vague and conclusory.  *Johnson*

*v. Richards*, 617 F. Supp. 113, 114 (W.D. Okla. 1984).  *See also Cotner v. Hopkins*, 795 F.2d

900, 902 (10th Cir. 1986) (a failure to provide specific factual allegations renders a complaint

vague and conclusory).

Defendants characterize Mr. Boles' proposed amended complaint as "unintelligible" and

"difficult to understand."  In many respects, that criticism is well-founded.  The proposed

amended complaint filed on January 22, 2007 asserts the following claims for relief: (1) "cruel and

unusual punishment with strong overtones of religious discrimination, having no perceivable

penological interest or rational medical basis," (2) failure to provide disability impairment

accommodations in violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* and the

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and (3) "pattern, policy, practice and

custom of violating inmate constitutional rights."  Plaintiff Boles also filed on January 22, 2007 an

"Addendum D Cause of Action - Supplemental Statement of Facts to Tendered Amended

Complaint" (doc. # 80).

Although the reader is told to consider the fifteen-page Addendum and proposed amended

complaint "as a unit," neither document is a model of clarity.  For example, it is not at all clear

whether the proposed amended complaint is intended to supplant entirely the Second Amended

Complaint, or merely supplement the current claims for relief.  The first claim asserted in the

proposed amended complaint seems to be brought under the Eighth Amendment, and perhaps the

First Amendment.  The first claim only contains specific references to putative Defendants

Cristelli, Berrends and Zavislana.  This claim does not mention by name any of the current

8

Defendants.  The second claim, which alleges statutory violations, specifically mentions

Defendants Creany and Walsh, but none of the 32 putative Defendants.  The third claim for relief

seems to allege a "pattern, policy, practice and custom" of Eighth Amendment violations based

upon deficient medical care.  This claim refers specifically to putative Defendants Corochi,

Pardus, Rulo, Zenon, Montoya, Cristelli, Eggleston, and Zavislan, as well as current Defendants

Dansdill, Mallary and DeCesaro.

Unfortunately, the "Supplemental Statement of Facts" provided in Plaintiff's Addendum

merely adds to the reader's confusion.  Each of the current and putative Defendants are

referenced with some corresponding factual recitation.  However, the reader is left to guess how

these factual assertions relate to the proposed claims for relief.  For example, putative Defendant

Martinez is described as the medical administrator at Fremont Correctional Facility.  The

Addendum alleges that Ms. Martinez "deliberately issued orders that Boles would not be allowed

any further access to physicians, specialists, or medications" and "further approved extortion of

money from Boles' inmate account because of Boles' legal work."  *See* Addendum, at p. 6.

Plaintiff contends that through her actions, Ms. Martinez violated his First, Fourth, Fifth, Sixth,

Eighth and Fourteenth Amendment rights.  However, several of these Amendments are not cited

in the specific claims asserted in the proposed amended complaint.  Similarly, putative Defendant

Brown was the law librarian at FCF and Four Mile Correctional Center.  Plaintiff's Addendum

alleges that Ms. Brown on two separate (but unidentified) occasions interfered with Plaintiff's

litigation by denying him "copies of evidence showing Boles had exhausted administrative

remedies."  *See* Addendum, at p. 7.  It is not at all clear which claim for relief in the proposed

amended complaint would encompass Ms. Brown's alleged conduct.

Dismissal under Rule 12(b)(6) also will be upheld when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting all well pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff. *Sutton v. United Air Lines, Inc.*, 130 F.3d 893, 896-97 (10th Cir. 1997) (internal quotation marks and citations omitted), *aff'd*, 527 U.S. 471 (1999). *See also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (to dismiss an *in forma pauperis* complaint, a district court must find that complaint "lacks an arguable basis either in law or in fact").

Liability under 42 U.S.C. § 1983 must be based upon a defendant's personal involvement in the constitutional violation. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ('personal participation is an essential element in a § 1983 claim"). To establish personal participation, the plaintiff must show that the defendant caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). An individual personally participates in the deprivation of a constitutional right if (a) he participates directly in the constitutional violation, (b) he acts or fails to act with reckless disregard of the plaintiff's constitutional rights, or (c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his knowledge and consent. See *Smith v. Rowe*, 761 F.2d 360, 269 (7th Cir.1985).

Plaintiff's proposed amended complaint and Addendum fail to allege facts that would demonstrate personal participation by several of the putative Defendants. For example, Plaintiff seeks to hold Joe Ortiz, the executive director the Colorado Department of Corrections,

10

individually liable because he has "statutory authority and responsibility for the care of each

individual prisoner placed in his custody." *See* Addendum, at p. 7.  However, a defendant may

not be held liable for constitutional violations merely because he or she holds a supervisory

position. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *Mitchell v. Maynard*, 80

F.3d 1433, 1441 (10th Cir. 1996).  Similarly, Boles claims that putative Defendant Mike Rulo

should be individually liable because he "had a statutory duty as inspector general of DOC to

investigate and to take appropriate action to allegations of wrongful conduct by DOC personnel."

Plaintiff contends that Rulo "was informed of the alleged violations here in (sic) and has not

responded in any way, nor has he done his duty."  *See* Addendum, at p. 8.  Boles cannot establish

personal involvement based merely on the fact that a putative Defendant received correspondence

regarding the alleged misconduct.  *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997)

(allegation that defendant ignored a prisoner's letter of protest and request for investigation is

insufficient to hold that official liable for alleged underlying violation).  As the Seventh Circuit

Court of Appeals observed in *Crowder v. Lash*, 687 F.2d 996, 1006 (7th Cir. 1982), "such a broad

theory of liability is inconsistent with the personal responsibility requirement for assessing

damages against public officials in a section 1983 action."  At a minimum, the proposed amended

complaint and Addendum, as drafted, do not set forth sufficient facts to demonstrate personal

participation in any constitutional violation by putative Defendants Ortiz, Carochi, Pardus,

Putnam, Rulo, Shames, Cox, Filer, Keisel, Zwirn, Lusk or Strikler.  Based upon Plaintiff's own

allegations, any attempt to join of these Defendants would appear to be futile.

   In ruling on a motion to amend, it is appropriate for the court to consider judicial economy

and the most expeditious manner to dispose of the merits of the litigation.  *Select Creations, Inc.*

*v. Paliafito America, Inc.,* 830 F. Supp. 1213, 1216 (E.D. Wisc. 1993).  Under the circumstances, I do not believe the interests of justice would be served by requiring the current Defendants or the putative Defendants to respond to a proposed amended complaint and Addendum that are plainly deficient.  Accordingly, I recommend that Plaintiff Boles' Motion to Amend Operative Complaint be denied without prejudice.

II.     *Defendants' Partial Motion to Dismiss*

As the operative pleading in this case, the Second Amended Complaint alleges that Mr. Boles suffers from various medical conditions, including hypoglycemia, sleep apnea, irritable bowel syndrome and allergies, which cause substantial physical and psychological harm.  At all times relevant to the claims in the Second Amended Complaint, Mr. Boles was incarcerated at Fremont Correctional Facility (FCF).  Plaintiff contends that Defendants' failure to provide adequate medical treatment and appropriate dietary supplements while he was housed at FCF resulted in constitutional and statutory violations.

Boles' First Claim for Relief alleges violations of the First Amendment and Eighth Amendment by Defendants Dansdill, Peoples, Creany, Mallary, Masterson and DeCesaro. According to the Second Amended Complaint, Mr. Boles had been prescribed kosher therapeutic diet snacks to address his hypoglycemia and irritable bowel syndrome.  Plaintiff alleges that in April 2004 and May 2005, Defendant Peoples was the "senior officer in charge of Kosher food preparation at FCF and preparation of the plaintiff's prescribed snacks."  *See* Second Amended Complaint, at p. 4(b).  According to the Second Amended Complaint, in April 2004, Defendant Peoples prohibited FCF's kosher food preparation area from complying with Jewish dietary

12

requirements which "causes the food . . . to be unfit or non-kosher for passover consumption." *Id.* at 4(b).  The Second Amended Complaint further avers that in April 2004 and May 2005, Defendant Peoples ordered kosher food preparers to deviate from Mr. Boles' prescribed therapeutic snack regime, which interfered with Plaintiff's medical treatment and made him physically ill.  *Id.* at 4(c).

Plaintiff alleges that in February 2004, Defendant Dansdill, in his capacity as FCF's kitchen manager, threatened to have Plaintiff's kosher therapeutic snacks canceled in retaliation for his complaints about bad food and missing snacks.  Boles claims that these threats placed him "in fear of serious physical harm."  The Second Amended Complaint further avers that in April 2004, Defendant Dansdill gave Defendant Peoples approval to "act in a manner causing Kosher food to become non-kosher" and "gave after-the-fact approval to Lt. Peoples' order that preparers deviate from the prescription for the plaintiff's snacks."  *Id.* at 4.  Also in April 2004, Defendant Dansdill allegedly conspired with Dr. Creany to cancel Plaintiff's therapeutic snacks, thereby "impos[ing] excessive force which struck great fear in the plaintiff causing psychological as well as physical harm."  *Id.* at 4(b).  Plaintiff alleges that Defendant Dansdill exceeded his authority by cancelling the prescribed snacks on April 28, 2004.

During the relevant time period, Defendant Creany was the chief physician at FCF.  In his First Claim, Plaintiff alleges that Dr. Creany "conspired with Captain Dansdill to discontinue therapeutic diet snacks on non-medical ground" and then, after the snacks were reinstated, "threatened several times to have them cancelled again."  *Id.* at 4(d).  More specifically, Plaintiff contends that Defendant Creany violated his constitutional rights by allowing others to interfere with the "sound medical judgment" of the doctor and dietician who originally prescribed the

snacks and refusing to make an informed judgment of his own, by "deliberately" ignoring or overlooking symptoms that should have been apparent to even a lay person, and by failing to inquire into "essential facts" or conduct an adequate examination.  Notably, Mr. Boles claims that Defendant Creany "missed a very serious medical problem that would have been readily apparent to a reasonable licensed physician."  *Id.* at 4(d).

The First Claim for Relief further alleges that Defendants Mallary, Masterson, and DeCesaro ratified the constitutional violations of others by denying his grievances.  Finally, Plaintiff contends that Defendant Mallary, as the FCF Laundry and Food Services Manager, admitted to having authorized improper preparation of kosher food and admitted to Mr. Boles that his indifference "was personal."  *Id.* at 4(e).

Plaintiff's Second Claim for Relief centers on allergy symptoms which Mr. Boles describes as a "profusely" runny nose, frequent sneezing fits, clogged sinus and bronchial passages, and itchy, irritated eyes.  The Second Claim for Relief alleges that Defendant Walsh, a physician's assistant at FCF, was deliberately indifferent to symptoms that a layperson would have recognized as indicative of serious medical needs and which caused Plaintiff substantial physical and psychological harm.  Plaintiff alleges that Defendant Walsh denied prescribed medications and access to qualified medical personnel, on non-medical grounds.  Mr. Boles contends that Defendant Walsh's "actions equate . .. to a wanton infliction of pain and suffering."  *Id.* at 5.

In his Third Claim for Relief, Plaintiff alleges that he requested special accommodations for disabilities "that are related to his confirmed medical maladies of sleep apnia, IBS and hypoglycemia," including prescribed breathing machines, prescribed medication, and diet.  Mr. Boles maintains that the breathing machines, diet and medication he was receiving during the

relevant time period were "less efficacious than what was originally ordered." In asserting a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 701, *et seq.*, Plaintiff alleges that deficiencies in his medical care create a barrier to his ability to function as a normal human being, deny him access to services, programs and benefits, inhibit his recreation and employment opportunities, and exacerbate the harms stemming from his medical problems.

On December 28, 2007, Defendants filed their Partial Motion to Dismiss (doc. #69), along with an accompanying brief that raises several alternative grounds for dismissal.[2] Defendants Dansdill, Creany, Peoples and Walsh argue that the First and Second Claims for Relief must be dismissed for failure to state a claim for relief under the Eighth Amendment. To the extent that the First Claim challenges the cancellation of Plaintiff's therapeutic snacks, Defendants Dansdill and Peoples maintain that they were entitled to rely on Dr. Creany's medical determination regarding Plaintiff's need for therapeutic snacks contend, and suggest that Plaintiff's First Claim reflects nothing more than Plaintiff's disagreement with Defendant Creany's professional judgment. In the alternative, Defendants Masterson, DeCesaro and Dansdill argue that they should be dismissed from the First Claim based upon their lack of personal participation in the alleged Eighth Amendment violation. Defendant Walsh argues that the Second Claim for Relief should be dismissed for failure to allege medical conditions sufficiently serious to rise to the level of an Eighth Amendment violation. Defendant Creany contends that the Third Claim for Relief must dismissed because Plaintiff fails to allege that he is a qualified individual with a disability and

---

[2]Defendants Dansdill, Peoples and Mallary concede that Plaintiff's First Claim for Relief alleges a First Amendment claim against them that is sufficient to survive dismissal under Fed.R.Civ.P. 12(b)(6). *See* Brief in Support of Partial Motion to Dismiss (doc. # 70), at 21.

fails to allege any discrimination prohibited by the ADA or Rehabilitation Act.  Defendants also

move to dismiss on the basis of qualified immunity and Mr. Boles' failure to allege a physical

injury as required under the Prison Litigation Reform Act.

A.      Plaintiff's Eighth Amendment's Claims

Not all claims of improper medical care rise to the level of a constitutional violation.  The

Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious

medical needs of prisoners in their custody.  *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and

wanton infliction of pain' proscribed by the Eighth Amendment."  *Id*. at 104 (quoting *Gregg v.

Georgia*, 428 U.S. 153, 182-83 (1976) (internal citations omitted).  "This is true whether the

indifference is manifested by prison doctors in their response to the prisoner's needs or by prison

guards intentionally denying or delaying access to medical care or intentionally interfering with the

treatment once prescribed."  *Id.*

In order to assert an Eighth Amendment claim that prison officials were deliberately

indifferent to his medical needs, Boles must demonstrate that (1) he suffered objectively serious

medical needs and (2) the prison officials actually knew of but deliberately disregarded those

needs.  *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980);  *Dulany v. Carnahan*, 132 F.3d

1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).  A

medical need or condition is objectively serious if it is "one that has been diagnosed by a physician

as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).[3]

An Eighth Amendment claim is not asserted "if a prisoner's complaint is directed at the wisdom or quality of the medical care he received in prison, even if that treatment is so negligent as to amount of medical malpractice." *Brinton v. Gaffney*, 554 F. Supp. 388, 389 (E.D. Pa. 1983). *See also Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (simple negligence or inadvertent failure to provide adequate medical care does not constitute the unnecessary and wanton infliction of pain). Moreover, a "prisoner's right is to medical care not to the type or scope of medical care which he personally desires." *Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir. 1975) (internal quotation marks and citation omitted). The Constitution does not guarantee a prisoner the treatment of his choice. *Ledoux,* 961 F.2d at 1537 (citations omitted).

On a motion to dismiss, the court must accept all well pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Sutton*, 130 F.3d at 896-97. As to his First Claim for Relief, Plaintiff alleges that his hypoglycemia and irritable bowel syndrome represent objectively serious medical needs for purposes of the Eighth Amendment. Plaintiff's Second Claim for Relief alleging various respiratory problems and irritated eyes presents a closer question. However, the First and Second Claims for Relief assert that Plaintiff's therapeutic snacks had been prescribed by medical professionals and that his respiratory ailments

---

[3]Factors that may be indicative of a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain," as well as the "potential for harm if medical care is delayed or denied." *Gutierrez v. Peters*, 111 F.3d 1364, 1373, n. 8 (7th Cir. 1997) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

had been treated with physician-prescribed medications.  While not determinative of the ultimate

merits of Plaintiff's claims, the Second Amended Complaint avers that medical professionals had

concluded Mr. Boles was suffering from medical conditions that were sufficiently serious to

mandate treatment.  At this stage of the proceedings, those allegations survive a motion to

dismiss.

        As to the second prong of his Eighth Amendment claims, Plaintiff alleges that Defendants

Dansdill, Peoples, and Creany discontinued his prescribed snacks on non-medical grounds and in

retaliation for Plaintiff's previous grievances.  Mr. Boles specifically alleges that Defendants

Dansdill and Creany stopped his therapeutic snacks, and that Defendant Creany refused to see the

Plaintiff for further evaluations.  The Second Claim alleges that Defendant Walsh denied

prescribed medications, and denied Plaintiff access to qualified medical personnel.  The Tenth

Circuit has recognized that "(a) a medical professional failing to treat a serious medical condition

properly; and (b) a prison official preventing a inmate from receiving medical treatment or denying

access to medical personnel capable of evaluating the inmate's condition" may "constitute

deliberate indifference in a prison medical case."  *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir.),

*cert. denied*, 127 S.Ct. 131 (2006) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir.

2002)).  Liberally construed, the First and Second Claims allege that Defendants Peoples,

Dansdill, Creany and Walsh knew of Plaintiff's serious medical conditions and despite this

knowledge failed to ensure that he received proper treatment.

        Bearing in mind that *pro se* complaints must be liberally construed and that Rule 12(b)(6)

requires the court to determine whether the complaint provides relief under any set of facts, it

appears that Plaintiff has stated cognizable Eighth Amendment claims against Defendants

18

Dansdill, Peoples, Creany and Walsh.  Consequently, Mr. Boles's First and Second claims should proceed as to those Defendants.

Defendants Dansdill, Masterson and DeCesaro argue that the First Claim for Relief should be dismissed as to them because Plaintiff has failed to allege their personal participation in a constitutional violation.  Dansdill suggests that the First Claim merely alleges that in April 2004, he "gave after-the-fact approval to Lt. Peoples' order that preparers deviate from the prescription for the plaintiff's snacks."  Dansdill's argument overlooks other factual averments in the First Claim.  Plaintiff also claims that Defendant Dansdill retaliated against Plaintiff because of his many grievances by threatening to cancel Plaintiff's prescribed snacks and by later conspiring with Defendant Creany to discontinue the snacks for non-medical reasons.  The First Claim for Relief specifically alleges that other medical staff concluded that "Mr. Dansdill exceeded his authority in cancelling the therapeutic diet snacks."  *See* Second Amended Complaint, at 4(b).

While the court is unpersuaded by Defendant Dansdill's arguments concerning personal participation, the same cannot be said for Defendants Masterson and DeCesaro.  Defendants Masterson and DeCesaro are only named in the First Claim for Relief, where it is alleged that they ratified the constitutional violations of co-Defendants by denying his grievances.  These allegations are deficient as a matter of law.  *Cf. Johnson v. G.E.O./Lawton Correctional Facility*, 2005 WL 2739212 (W.D. Okla. 2005) (holding that plaintiff failed to state a claim for relief based upon a defendant's participation in the processing of a grievance; held that the *pro se* plaintiff had not demonstrated the required "affirmative link" between the defendant and the underling constitutional violation).  *See also Downing v. Clinton*, 2006 WL 3054314, *15 (E.D. Wash. 2006) (in granting motion to dismiss, held that defendant's receipt of grievances did not establish

19

her personal participation in decisions relating to medical care); *Coates v. Sheahan*, 1995 WL 430950, *2 (N.D. Ill. 1995) (held that grievances submitted to a supervisory official are insufficient to establish that official's personal participation in a constitutional violation). Accordingly, I recommend that Defendants Masterson and DeCesaro be dismissed from this action.

      B.    Plaintiff's Disability Claim

      Mr. Boles' Third Claim for Relief alleges that his request for special accommodations for his sleep apnea, irritable bowel syndrome and hypoglycemia were denied in violation of the ADA and the Rehabilitation Act.  Defendants have moved to dismiss this claim, arguing that Plaintiff has failed to allege facts that would establish that he is an individual with a qualified disability or that he is substantially limited in any major life activity.  Defendants further contend that the Third Claim fails to allege any discrimination prohibited by these statutes.

      As an initial matter, the court finds that the Third Claim fails to comply with the requirements of Fed.R.Civ.P. 8(a), and suggests nothing more than "a bare averment that [Plaintiff] wants relief and is entitled to it."  *See* Wright & Miller, *Federal Practice and Procedure*, Civil 2d § 1215 and 145 (1990).  Plaintiff's Third Claim does not clearly identify the individual(s) who allegedly discriminated against Mr. Boles.  While the Third Claim alleges that Plaintiff "requested special (ADA accommodation for disabilities" and that his requests were denied, Mr. Boles does not specifically identify who refused those accommodations.  The Third Claim merely states that Plaintiff's request "was denied based on Dr. Creany's recommendations," thereby suggesting that someone other than Dr. Creany was the ultimate decision maker.  It would appear that this unidentified decision maker is not included within the current set of

20

Defendants.

Even if the Third Claim were to satisfy the pleading requirements of Rule 8(a), Plaintiff has failed to allege a claim under the ADA or the Rehabilitation Act.  Those statutes provide that no qualified individual with a disability may be excluded from participation in or be denied the benefits of services, programs or activities of a public entity solely by reason of such disability. Prisons are "public entities" subject to the ADA and Rehabilitation Act.  However, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) (quoting *United States v. University Hospital*, 729 F.2d 144, 157 (2d Cir. 1984)).  The Tenth Circuit has joined several circuits in holding that the ADA and Rehabilitation Act do not provide remedies for alleged medical malpractice.  *Id.  See also Rashad v. Doughty*, 4 Fed.Appx. 558 (10th Cir. 2001) (holding that "the failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation); *Moore v. Prison Health Services, Inc.*, 201 F.3d 448 (10th Cir. 1999) (finding that the ADA and Rehabilitation Act afford disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general cause of action for challenging the medical treatment of their underlying disabilities).

Although Plaintiff's Third Claim alludes to "barriers" that prevent Mr. Boles from functioning as a human being and deny access to services, programs and benefits, it fails to identify what those barriers might be or the specific services, programs or benefits that are inaccessible.  A fair reading of the Third Claim reveals nothing more than objections to Plaintiff's

course of treatment.  Although Plaintiff demands accommodations for his sleep apnea, he admits

that a breathing machine has been provided.  Mr. Boles simply believes that a different machine

would be more efficacious.  Similarly, Plaintiff believes that his rights under the ADA and

Rehabilitation Act have been violated because the "diet and medication" for his irritable bowel

syndrome and hypoglycemia are not consistent with his original prescriptions and are "less

efficacious than what was originally ordered."  While Plaintiff may take exception to the medical

treatment provided by the Department of Correction, those objections will not rise to the level of

an ADA or Rehabilitation Act violation.  *Cf. Salazar v. City and County of Denver*, 2005 WL

2372842 (D. Colo. 2005).   Accordingly, I recommend that Plaintiff's Third Claim for Relief be

dismissed.

C.    Qualified Immunity

Defendants also assert the defense of qualified immunity as to Plaintiff's constitutional and

statutory claims.  Under the doctrine of qualified immunity, government officials are immune from

civil damages liability for constitutional torts as long as their actions could reasonably have been

thought consistent with the rights they are alleged to have violated.  *Anderson v. Creighton*, 483

U.S. 635, 638 (1987).  Qualified immunity protects defendants not only from liability, but also

from suit.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Such immunity is qualified in that it

does not obtain when otherwise immune officials violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Armijo v. Wagon Mound

Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998) (quoting *Clanton v. Cooper*, 129 F.3d

1147, 1153 (10th Cir. 1997)).  This court must review Defendants' Partial Motion to Dismiss

based on qualified immunity "under the customary motion to dismiss standard."  *Currier v.*

*Doran*, 242 F.3d 905, 917 (10th Cir. 2001). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* However, the court is also mindful of the United States Supreme Court's admonition that a ruling on the issue of qualified immunity should be made at the earliest possible stage of the proceeding in order to preserve the protections of the privilege. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Where a defendant raises the defense of qualified immunity, the court must first resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Scott v. Harris*, 2007 WL 1237851, *3 (2007). Once the court determines that the plaintiff has asserted a violation of federal law, "*only then* do we inquire 'whether the right was clearly established such that a reasonable person in the defendant's position would have known that his or her conduct violated that right.'"[4] *Butler v. City of Prairie Village*, 172 F.3d 736, 745 (10th Cir. 1999) (citation omitted) (emphasis added). *See also Saucier*, 533 U.S. at 202 (in determining whether a right is clearly established, the relevant inquiry is "whether it would be clear to a [reasonable government official] that his conduct was unlawful in the situation he confronted"); *Anderson*, 483 U.S. at 640 (plaintiff must establish that "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right"). The plaintiff bears the burden of showing with particularity facts and law establishing the inference that

---

[4] In the qualified immunity context, law is clearly established if there is a Supreme Court or applicable circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains. *See Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 594 (10th Cir. 1999).

the defendant violated a clearly established federal constitutional or statutory right.  *Walter v.*

*Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994).

> This two-step analysis "is designed to 'spare a defendant not only
> unwarranted liability, but unwarranted demands customarily imposed upon those
> defending a long drawn-out lawsuit.' " *Wilson v. Layne,* 526 U.S. at 609, 119
> S.Ct. 1692 (quoting *Siegert,* 500 U.S. at 232, 111 S.Ct. 1789).  If the plaintiff fails
> to satisfy either part of the two-part inquiry, the court must grant the defendant
> qualified immunity. *Albright,* 51 F.3d at 1535. . . .

*Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

The first step in analyzing a qualified immunity defense is to ask whether the alleged

conduct sets out a constitutional violation.  *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir.

2003).  As discussed *supra*, the court has answered this question in the affirmative.  The next step

in the analysis of qualified immunity is to ask whether "the constitutional standards [were] clearly

established at the time in question."  *Smith*, 339 F.3d at 1211.  Claims for deliberate indifference

to serious medical needs of prisoners have long been recognized under the Eighth Amendment.

*See Estelle*, 429 U.S. at 97.  Whether or not Mr. Boles' claim will survive a motion for summary

judgment, his allegations sufficiently state a claim for deliberate indifference to withstand a Rule

12(b)(6) motion.  *See Huminski v. Rutland County*, 148 F. Supp.2d 373, 376 n. 1 (D. Vt. 2001)

(observing that the affirmative defense of qualified immunity generally cannot support a motion to

dismiss under Rule 12(b(6) because the defense requires an investigation into the facts and

evidence not available at an early stage of the pleadings).  To the extent that Defendants' Partial

Motion to Dismiss raises the defense of qualified immunity, it is properly denied on the present

record.

D.      The Prison Litigation Reform Act

Finally, Defendants have moved to dismiss, arguing that Boles failed to comply with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, which bars a prisoner from bringing a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See* 42 U.S.C. § 1997e(a) and (e).

"[A]lthough claims for mental and emotional distress can be brought pursuant to § 1983, . . . § 1997e(e) provides that 'such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'" *Turner v. Schultz*, 130 F. Supp.2d 1216, 1222-23 (D. Colo. 2001) (quoting *Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999)).  Courts have had difficulty in determining the precise scope of section 1997e(e).  Where inmates allege that defendants have been deliberately indifferent to their safety or welfare, or have inflicted emotional injury by depriving them of basic necessities of life, courts have applied section 1997e(e) to restrict the availability of judicial remedies if there is no showing of physical injury.  *See, e.g., Mason v. Schriro*, 45 F. Supp.2d 709, 716 (W.D. Mos. 1999) ("a review of cases from other courts indicates that [§ 1997e(e)] is most frequently applied where plaintiff alleges that defendants' actions have caused him to fear physical injury and fear for his safety and welfare, but he fails to show any physical injury").

While the PRLA requires "physical injury," the threshold may not be particularly high. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (suggesting that the PRLA requirement should be construed consistent with the "well-established Eighth Amendment standard," and must be more than *de minimis,* but need not be significant).  *But see Cain v. Commonwealth of Virginia*, 982 F. Supp. 1132, 1135, n. 3 (E.D. Va. 1997) (headaches causing vision loss and requiring pain medication as well as numbness, joint pain and stomach cramps did not constitute

25

physical injury within scope of § 1997e(e)); *Zehner v. Trigg*, 952 F. Supp. 1318, 1322-23 (S.D. Ind. 1997) (dismissing Eighth Amendment claim based upon prisoners' exposure to asbestos where no physical injury could be shown).

The Second Amended Complaint alleges that Defendants' denial of prescribed medical care has caused "irreparable psychological harm" and has made Mr. Boles "physically ill."  *Cf. Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001) (holding that "the Eighth Amendment may be implicated not only [by] physical injury, but also by the infliction of psychological harm").   These allegations suggest some physical manifestation or harm caused by the alleged Eighth Amendment violation.  *See Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (holding that section 1997e(e) limits a prisoner's remedies "if the only injuries are mental or emotional").  The court is mindful that an Eighth Amendment claim for denial of medical care does not require that the plaintiff actually experience serious physical injury as a result of that denial.  *See Harrison v. Barkley*, 219 F.3d 132, 136-38 (2d Cir. 2000).  *See also Archuleta v. Marshall*, 221 F.3d 1351, * 1 (10th Cir. 2000) (Table) (because "[t]he inquiry for Eighth Amendment excessive force claims by convicted prisoners is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm,' " the extent of the plaintiff's injury is not determinative in assessing whether an Eighth Amendment violation occurred) (quoting *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992)).

Under the standards governing a motion to dismiss, the court cannot conclude as a matter of law that Boles' alleged injuries have no physical component or are no more than *de minimus*. The court is also mindful that Boles is proceeding *pro se*.  Thus, his Second Amended Complaint

must be read "liberally." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983).  The court

concludes that Plaintiff has made a sufficient showing to preclude dismissal under § 1997e(e).


III.     *Plaintiff's Motion to Dismiss Tendered Defenses*

On February 5, 2007, this court entered an Order requiring Plaintiff to file his response to

Defendants' Partial Motion to Dismiss on or before February 12, 2007.  In satisfaction of that

Order, on February 9, 2007, Mr. Boles filed his "Motion to Dismiss Tendered Defences (sic) of

Defendants and Deny Dismissal of Plaintiff's Claims, at this point, Whether in Whole or in Part"

(doc. # 88)[5], and an accompanying "Brief in Answer to Defendants' Motion to Dismiss and Reply

to Defendants' Answer" (doc. # 87).

While the court understands Mr. Boles' desired objective, his Motion to Dismiss is

procedural flawed.  To the extent that Plaintiff incorporated in the same submission a response in

opposition to Defendants' Partial Motion to Dismiss and a "[m]otion to dismiss" Defendants'

tendered defenses of absolute immunity, qualified immunity and failure to state a claim for relief,

his filing violates D.COLO.LCivR 7.1C, which specifically states that

> A motion shall not be included in a response or reply to the original motion.  A
> motion shall be made in a separate paper.

Plaintiff's Motion to Dismiss should be denied as violative of this Local Rule.

Alternatively, to the extent that Plaintiff wishes to challenge the sufficiency of the

affirmative defenses presented in Defendants' Answer, the proper filing is a motion to strike under

---

[5]It is not clear whether Plaintiff Boles Motion to Dismiss is directed toward the arguments
raised in Defendants' Partial Motion to Dismiss or the affirmative defenses incorporated in the
Answer (doc. # 71) filed by Defendants Dansdill, People and Mallary on December 28, 2006.

Fed.R.Civ.P. 12(f).  That Rule provides a specific method for challenging the sufficiency of an affirmative defense, provided that the motion is made within 20 days after the service of an opposing party's Answer.  *But see Rockrohr v. Norfolk Southern Corp.*, 797 F. Supp. 664, 666 (N.D. Ind. 1992) (motions to strike an insufficient defense under Rule 129f) are generally disfavored).  *See also U.S. Commodity Futures Trading Commission v. A.S. Templeton Group, Inc.*, 297 F. Supp.2d 531, 533 (E.D.N.Y. 2003) (to prevail on a motion to strike a defense, plaintiff must show that (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense).

Accordingly, Plaintiff's Motion to Dismiss Tendered Defences (sic) should be denied without prejudice.


IV.    *Plaintiff's Motion for Temporary Restraining Order*

Mr. Boles has moved for a temporary restraining order (doc. # 94).  Plaintiff seeks an "Order to proscribe further denial of a proper medical evaluation for serious medical needs." Boles contends that equitable relief is necessary because he has several serious illnesses that have been previously diagnosed and suspects that "previous treatment may no longer be adequate." Specifically, Plaintiff requests an Order requiring the Department of Corrections to arrange for an evaluation, examination and prognosis of Mr. Boles' medical condition by a medical doctor specifically training in the treatment of hypoglycemia and intestinal disorders.

This is Mr. Boles' second attempt to obtain a temporary restraining order.  Plaintiff's first Application for Temporary Restraining Order sought to restrain the named Defendants and all

Department of Corrections employees from stopping, deviating from or altering his therapeutic diet snacks, from stopping or inappropriately regulating his use of a BiPAP machine or oxygen concentrator machine, and from interfering with, delaying or denying Plaintiff's prescribed or recommended medications. On September 8, 2005, the District Court denied Plaintiff's Application for Temporary Restraining Order after concluding that Mr. Boles had failed to allege any facts that demonstrate he is facing immediate and irreparable injury. Although the Tenth Circuit affirmed the District Court's denial of Plaintiff's request for preliminary injunctive relief, it acknowledged that Mr. Boles could file another Rule 65 motion "to the extent the situation has changed since the district court's decision." (*See* doc. # 54).

The substantive requirements for granting a temporary restraining order and preliminary injunction are identical. *See International Profit Associates, Inc. v. Paisola*, 461 F. Supp.2d 672, 675-76 (N.D. Ill. 2006); *Valley Community Preservation Commission v. Mineta*, 246 F. Supp.2d 1163, 1165-66 (D.N.M. 2002), *aff'd*, 373 F.3d 1078 (10th Cir. 2004). In order to obtain a temporary restraining order pursuant to Fed. R. Civ. P. 65, the moving party must establish: "(1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest." *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001) (citation omitted). "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991) (citation omitted).

"Because the limited purpose of a preliminary injunction is merely to preserve the relative

positions of the parties until a trial on the merits can be held, we have identified the following

three types of specifically disfavored preliminary injunctions . . . : (1) preliminary injunctions that

alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that

afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."

*Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258-59 (10th Cir. 2005) (internal quotation marks and

citations omitted).  "Such disfavored injunctions must be more closely scrutinized to assure that

the exigencies of the case support the granting of a remedy that is extraordinary even in the

normal course." *Schrier*, 427 F.3d at 1259 (internal quotation marks and citation omitted).

Mr. Boles seeks a mandatory injunction requiring a medical evaluation by a non-Department of

Corrections physician specializing in the treatment of hypoglycemia and intestinal disorders.  For

this reason, the temporary restraining order sought by Plaintiff "constitutes a specifically

disfavored injunction" that "must be more closely scrutinized." *Schrier,* 427 F.3d at 1259, 1261.

Once again, Mr. Boles has not alleged facts that would establish each of the essential

requirements for a temporary restraining order.  Plaintiff must show that he will suffer irreparable

injury if his request for preliminary injunction is denied.  "To constitute irreparable harm, an injury

must be certain, great, actual and not theoretical." *Schrier*, 427 F.3d at 1267 (citation omitted).

Even "serious or substantial harm is not irreparable harm." *Schrier*, 427 F.3d at 1267 (internal

quotation marks and citation omitted).  "The party seeking injunctive relief must show that the

injury complained of is of such imminence that there is a clear and present need for equitable relief

to prevent irreparable harm." *Schrier*, 427 F.3d at 1267 (internal quotation marks and citation

omitted).  While the moving party is not required to demonstrate the certainty of an injury

occurring, a speculative injury or the mere possibility of harm will not suffice for the issuance of a

preliminary injunction.  *Hills Pet Nutrition, Inc. v. Nutro Products, Inc.*, 258 F. Supp.2d 1197, 1205-06 (D. Kan. 2003)

The record before the court demonstrates no present threat of irreparable harm.  *See Schrier*, 427 F.3d at 1267 ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance").  At best, Mr. Boles' Motion for Temporary Restraining Order offers little more than speculation that his medical condition "is growing substantially worse to the point of irreparable harm."  Because Plaintiff has failed to satisfy each of the four prerequisites, his request for a temporary restraining order should be denied.

**CONCLUSION**

Accordingly, it is RECOMMENDED that:

1.      That Defendants' Partial Motion to Dismiss (filed December 28, 2006) (doc. #69) be GRANTED IN PART, as to Defendants Masterson and DeCesaro and Plaintiff's Third Claim for Relief, and DENIED IN PART in all other respects.

2.      Plaintiff's Motion to Amend Operative Complaint (filed January 22, 2007) (doc. #79) be DENIED.

3.      Plaintiff's Motion to Dismiss Tendered Defences (sic) of Defendants (filed February 8, 2007) (doc. # 88) be DENIED.

4.      Plaintiff's Motion for Temporary Restraining Oder (filed February 26, 2007) (doc. #94) be DENIED.

**Advisement to the Parties**

31

Within ten days after service of a copy of this Memorandum and Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1). Objections to a magistrate judge's recommendation must be made within ten days of service of the Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review by the district court. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.), *cert. denied,* 519 U.S. 909 (1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d at 1060. Failure to make timely objections to the magistrate judge's proposed findings and recommendations will bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district

court based on the proposed findings and recommendations of the magistrate judge.  *In re Key Energy Resources, Inc.*, 230 F.3d 1197, 1199-1201 (10th Cir. 2000); *Theede v. United States Department of Labor*, 172 F.3d 1262, 1267-68 (10th Cir. 1999); *One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d at 1059-60.  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

     Dated at Denver, Colorado this 29th day of May, 2007.

BY THE COURT:


     s/Craig B. Shaffer
United States Magistrate Judge